## Greider's Appeal.

To constitute a surrender of a term demised by a tenant to his landlord, no set form of words is requisite, nor is it necessary that there should be a formal re-delivery or cancellation of the deed or instrument by which the estate surrendered was created. All that is necessary is, the agreement and assent of the proper parties manifesting such an intent, followed by a yielding up of the possession of the demised premises by the tenant to the landlord.

Under our statute of frauds and perjuries, it is not necessary in all cases, that the express rescission of a lease of lands should be in writing.

It is settled in Pennsylvania, that notwithstanding the generality of the language of that part of our statute which speaks of assigning and surrendering estates and interests in lands, an oral surrender of a lease for a term of less than three years, whether such lease be by writing or not, will destroy the term by merger; and that at the moment of such surrender by the lessee, with the assent of the lessor, the relation of landlord and tenant ceases, and the estate of the tenant is determined.

The effect of a surrender is to pass the estate of the surrenderor, and thereupon his estate is drowned and extinguished in the estate of the surrenderee; and the result of this drowning and extinguishment is, that rent reserved and issuing out of the less estate, and not due at the time of the surrender, is also extinguished.

A demise, for two years at a yearly rent, is an entire contract, and by an acceptance of a surrender before the expiration of the second year, the landlord, having destroyed his right to recover the entire rent of that year according to the covenants in the lease, cannot recover any part of it, and is therefore not permitted to claim *pro rata*.

The provisions of the 83d and 84th sections of the act of the 16th of June, 1836, relating to executions, were intended to make amends to the landlord for taking away his power of distress by a judicial sale of the tenant's goods; but it is equally clear that the act contemplated an existing tenancy at the time of the sale, for if there be no tenancy, there can be no right to distrain except in the single instance allowed by the 14th section of the act of the 21st of March, 1772.

By a surrender of the tenant to his landlord, after a levy has been made by an execution creditor of the tenant upon his goods found on the demised premises and before the sale of the same by the sheriff, the tenancy is gone and with it the right of the landlord to claim any rent by distress or otherwise; and the execution creditor is entitled to the proceeds of the sale of said goods, to the exclusion of the landlord.

FROM the District Court of the city and county of Lancaster. *Dec.* 3. This was an appeal by John Greider, John Stauffer, and Christian Nolt, execution creditors, from the decree of the District Court, distributing the proceeds of a sale by the sheriff of

the personal property of Peter Sellers. The facts of the case, as appeared by the paper-book, and as stated in the opinion of this court, delivered by his honour Judge Bell, are the following:

"On the 10th of November, 1843, Jonas Nolt demised to Peter Sellers certain premises situate in Lancaster county, consisting of mills, houses and land, for the term of two years, to commence on the 1st day of April, 1844, at a yearly rent of $671, payable on the 1st days of April, 1845 and 1846. On the 2d day of January, 1845, Nolt sold and conveyed his reversionary estate in these premises to Michael Moore, and at the same time assigned to him the remaining portion of Sellers's term, to take effect from the 1st day of the succeeding April, of which Sellers had notice. Moore having thus become the landlord of Sellers, was entitled to receive the second years' rent when it should fall due. During the second year, viz.: on the 3d of January, 1846, a *fieri facias* issued out of the District Court for the city and county of Lancaster, at the suit of John Greider against Sellers, which was on the same day placed in the hands of the sheriff, and, on the 9th of the same month, duly levied on the goods of Sellers, being on the demised premises. On the 13th and 27th, two other *fi. fas.* issued from the same court against the same defendant, the first at the suit of John Stauffer, and the last at the suit of Christian Nolt, and were levied on the same goods, which, by virtue of these several writs, were subsequently sold for the sum of $844 49. This sum was insufficient for the payment of the several amounts endorsed on the executions.

"On the day before the first of these writs was levied on the said goods, to wit, on the 8th of January, Sellers, finding himself much embarrassed; and unable, under the pressure of the process issued against him, longer to carry on his business of miller, verbally agreed with Moore, the landlord, to surrender to him immediate possession of the demised premises, together with certain other matters, which agreement was, on the 13th of January, reduced to writing, as follows, though *antedated* as of the 8th, the day on which it took effect:

*"Big Chickes Mill, Jan.* 8, 1846.

"This is to certify that I, Peter Sellers, give up the mill to Michael Moore, senior, in his possession, and the land and tenant-houses, and clover-mill, and saw-mill; and the said Sellers agrees to work for him by the month at $15 per month, and find his own boarding, until the 1st of April, and the said Sellers also agrees to board Michael Moore, junior, at $6 per month till the 1st of April.

"Peter Sellers.

" In pursuance of this agreement, Moore, on the 8th, took possession of the premises and received the issues and profits thereof; and Sellers, the late tenant, entered into Moore's service as a journeyman miller, and continued therein until after the sheriff's sale of his personal chattels. After the levy, and before the sale, Moore gave notice to the sheriff that he claimed, as landlord, a proportion of the last year's rent, calculated up to the time of the levy, to be paid out of the proceeds of the sales. These proceeds being paid into the court below by the sheriff, it was there decided, under rules taken respectively by Moore and the execution creditors, that the former, as landlord, was entitled to receive " the rent due from the 1st of April, 1845, to the 8th of January, 1846," and a decree was made accordingly. From this decree the execution creditors have appealed to this court."

*Franklin*, for appellants.

*N. Ellmaker*, contrà.

*Dec.* 25. BELL, J., (after stating the case.)—This case, as stated, calls for the consideration and decision of two questions: 1. Was there such a surrender by Sellers, the tenant, to the landlord, of the term demised, as merged or extinguished the lesser estate? and if so, then, 2. What is the legal effect of such a surrender upon the claim here set up by the late landlord to be paid a proportionable part of the year's rent?

To constitute an express surrender, no set form of words is necessary, nor is it required there should be a formal re-delivery or cancellation of the deed or other instrument which created the estate to be surrendered. All that is requisite is the agreement and assent of the proper parties manifesting such an intent, followed by a yielding up of the possession to him who hath the greater estate, for a surrender is nothing more than a delivery up of lands, tenements or hereditaments, and the estate a man hath therein, unto him who hath the greater or equal estate in immediate reversion or remainder; Co. Litt. 337 b, Shep. Touch. 301. Nor is it essential that in all cases since the enactment of the statute of frauds, the express rescission of a lease of lands should be by writing, for, notwithstanding the generality of the language of that part of our statute which speaks of assigning and surrendering estates and interests in lands, it is settled, in Pennsylvania, that an oral surrender of a lease for a term less than three years, whether the demise be by writing or not, will destroy the term by merger; McKinney *v.*

Reader, 7 Watts, 123. In the present instance, there was, as has been shown, an express verbal agreement between the landlord and tenant, made before the levy by the sheriff, for the yielding up of the demised premises by the latter to the former, which agreement was immediately executed by an actual delivery of the possession in accordance with it. By declarations and acts that admit not of doubt or question, Sellers voluntarily relinquished his character of tenant and assumed the humbler position of servant, in which relation he stood, to Moore, at the time of the levy. From the moment of this change of position, assented to by Moore, the relation of lessor and lessee ceased, and the estate of the tenant was determined.

But if a writing were necessary to the validity of this surrender, that ingredient is present here. It is true that, although dated before the levy, it was not executed until afterwards. But apart from the fact that it was intended to relate back to the date it bears on its face, being simply expressive of the agreement then made, and might, therefore, as against a party to it, be taken as operative from that day, it is sufficient, as will presently be seen, for the purposes of the execution creditors, to consider it as effective only from the date of its delivery to and acceptance by the landlord.

The fact of an actual surrender of the lesser estate being established, it remains to consider what effect, in law, this had upon the claim now set up by the surrenderee. The fruit of a surrender is to pass the estates of the surrenderor, and, thereupon, his estate is drowned and extinct in the estate of the surrenderee; Shep. Touch. 300, 301; and the result of this drowning and extinction is, that rent reserved and issuing out of the lesser estate, and not due at the time of the surrender, is also extinguished; Gilbert on Rents, 149. A demise, such as the present, is an entire contract, and by an acceptance of a surrender, pending a current year, the landlord having destroyed his right to recover the entire rent of that year, according to the covenants of the lease, cannot recover any part of it, and is, therefore, not permitted to claim *pro rata;* Hall *v.* Burgess, 5 Barn. & Cress. 332, (11 E. C. L. R. 246;) Grimman *v.* Legge, 8 Barn. & Cress. 324, (15 E. C. L. R. 229.) A strong illustration of this doctrine is to be found in the case of Bain *v.* Clarke, in the Supreme Court of New York, 10 Johns. 266. There the tenant surrendered his estate to the landlord by writing, endorsed on the lease, stipulating, nevertheless, for the payment of the rent reserved by the lease, and that the landlord might take all lawful means for the recovery thereof, according to the lease and the laws of the state. The landlord having distrained

for a year's rent, the late tenant brought replevin, and, upon these facts, it was held by the court, that "the relationship of landlord and tenant between the parties was completely gone, and though the lessee might continue bound for a year's rent, by reason of the express agreement in the deed of surrender, yet that was a personal responsibility founded on the agreement, and could not arise from the continuance of the contract between them, as landlord and tenant." It is added, "the idea of a continuance of the rights and properties of the original contract is altogether inconsistent with the fact and effect of the surrender."

I have thus considered the subject of merger by surrender and its effects upon accruing rent, more at length than I would have deemed necessary, were it not that the learned judges, who ruled the case below, seemed to think the right of the landlord to receive a portion of the year's rent depends upon some equity in him, springing from the fact that his acceptance of the surrender was *bona fide*, and without any intention of wrong or fraud upon the rights and remedies of the general creditors of the tenant. But this is a mistake. There is no room here, for any inquiry into supposed conflicting equities. It is simply a question *stricti juris*, to be determined upon the legal condition of the parties before us, as this is ascertained by the acts of each.

The right of this landlord to demand the rent in question being thus destroyed by the operation of the general law, it remains briefly to inquire, whether there be any thing in the 83d and 84th sections of the act of 16th June, 1836, relating to executions, as these have been construed by our courts, which will restore him to a better position? It cannot be doubted that the object of these provisions was to make the landlord amends for taking away his power of distress by a judicial sale of the tenant's goods, liable thereto, and I think it is also clear the act contemplated an existing tenancy at the time of the sale, for if there be no tenancy, there can be no right to distrain, except in the single instance given, by the 14th section of the act of 21st March, 1772, which has no application here. The first of the sections above noticed, provides that goods taken in execution and liable to the distress of the landlord, shall be liable to the payment of rent due at the time of taking such goods in execution; and the next directs that, *after the sale of such goods*, by the officer, he shall pay out of the proceeds the rent so due; at the moment therefore when the officer can be legally called on to pay, it is clear he is without authority to make such payment. It is

true that in West *v.* Sink, 2 Yeates, 274, construing the act from which these provisions are borrowed, it was held the landlord is entitled to a proportional part of the year's rent, under the statute, where a levy is made in the middle of a current year, upon the notion that it was *debitum in præsenti*, though *solvendum in futuro*, and that the time of the levy ascertains the proportion the landlord may demand. But this determination, though since adhered' to upon the rule *stare decisis*, is, by subsequent cases, clearly shown to proceed upon illogical reasoning, (Lichtenthaler *v.* Thompson, 13 Serg. & Rawle, 158; Bank *v.* Wise, 3 Watts, 394,) and is, therefore, not to be extended to cases differently characterized.

It certainly cannot be successfully invoked as authority for the position, that because, under certain circumstances, accruing rent may be said to be *due*, at the time of taking goods in execution, within the meaning of the statute, therefore the officer is bound to pay to the landlord, where the whole rent has been extinguished by agreement of the parties, or operation of law, between the time of levy and the time of sale. Here, upon Moore's own showing, such at least is the fact, and, consequently, even upon this view of the case, the doctrine of West *v.* Sink does not help his claim. As has been said, the tenancy is gone, and with it the right to claim *any* rent, by distress or otherwise.

But it is unnecessary to rest the decision upon this point, for here there was clearly a destruction of the landlord's right to demand payment of any portion of the rent before the tenant's goods were taken in execution, flowing from the actual surrender of the demised premises on the 8th of January. It follows there were no goods taken in execution liable to the payment of rent, even under the construction given to the statute in Pennsylvania, and, consequently, this landlord has failed altogether to bring his case within either the letter or spirit of the act. It makes no difference that, before the surrender, the landlord had a lien for the rent, which might have been made fruitful by the levy, since before this he had destroyed his right to the principal thing to which the lien was but an incident.

If the sanction of judicial decision be required to sustain the correctness of these conclusions, it may be found in Hodgson, assignee of Seaton, *v.* Gascoigne, decided by the Court of King's Bench, (5 Barn. & Cress. 88,) upon the analogous statute of 8 Anne, c. 14.

It results, from what has been said, that the decree of the court

below, giving a portion of the fund in court to Moore, the land-lord, in preference to the execution creditors, must be reversed.

> Decree reversed, and it is ordered that the fund in court be paid to the said execution creditors, in the order of the priority of their several executions, so far as it may be sufficient for that purpose.