# CASES

## ARGUED AND DETERMINED .

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

In re SWEENEY.

BIGHAM v. SOUTH SIDE TRUST CO.

(Circuit Court of Appeals, Third Circuit. April 3, 1914.)

No. 1796.

1. BANKRUPTCY (§ 188*)—PLEDGES—MORTGAGES—RIGHTS OF PLEDGEE.

Where mortgages on real property were pledged to petitioner as collateral security by a bankrupt, who, on acquiring title, leased the premises to tenants, the legal title to the property and the leases having vested in the bankrupt's trustee, petitioner as holder of the mortgages was not entitled to collect rents and profits from the mortgaged property as against the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–289, 291–295; Dec. Dig. § 188.*]

2. BANKRUPTCY (§ 188*)—MORTGAGES ON REAL PROPERTY—ACTUAL POSSESSION—NOTICE—RIGHT TO COLLECT RENTS.

Mere notice by a pledgee of mortgages on real estate as collateral security of an asserted right to collect rents, is not equivalent to actual possession by such pledgee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–289, 291–295; Dec. Dig. § 188.*]

Appeal from the District Court of the United States for the Western District of Pennsylvania; James S. Young, Judge.

In the matter of bankruptcy proceedings of John Francis Sweeney. On petition of Kirk Q. Bigham to restrain the South Side Trust Company from interfering with petitioner's collection of the rents of certain premises. From an order denying the petition, plaintiff appeals. Affirmed.

Ed. B. Scull and C. Elmer Bown, both of Pittsburgh, Pa., for appellant.

Geo. N. Monroe, Jr., of Pittsburgh, Pa., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. Sweeney, the bankrupt, was a builder and seller of small houses in the city of Pittsburgh. As these

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
212 F.—1

houses came to be sold, the sale was usually made subject to a first and a second mortgage. The first, given by Sweeney, was sold to investors and has little to do (except incidentally) with the present controversy; the second was an installment mortgage given by the purchaser of the house, binding him to pay small sums each month until the principal should be discharged. These mortgages were apparently not offered in evidence—at all events, they have not been printed—but the foregoing terms are not in dispute, although we have no further information about terms and are not advised concerning the due dates either of the installments or of the full principal of the mortgage debt. In 1908 and 1910 Sweeney gave two promissory notes to Bigham aggregating $24,600. Each of these notes was to be paid in monthly installments of $250, and some of the second mortgages were pledged as collateral security. These mortgages were also assigned of record to Bigham, but the legal title was only held as collateral. In certain contingencies he was authorized to sell the mortgages at public or private sale, and to become the buyer himself; but he has never exercised this power, nor (even if we assume that he had the right to sue on the mortgages without first buying them in at a sale) has he ever brought suit thereon.

For several years after the notes were given, Sweeney paid the monthly installments until he had reduced the debt to $16,000. Meanwhile changes were taking place in the incumbrances and in the ownership of the mortgaged premises. Some of the second mortgages were paid off, and others were substituted as collateral. In other instances the purchasers of the houses abandoned the attempt to pay the installments on the second mortgages and conveyed the legal title back to Sweeney (or sometimes to his wife); and in these instances leases were afterwards made by Sweeney and tenants went into possession thereunder. In the spring of 1912 Sweeney became financially embarrassed and fell into arrears in payment upon the notes. He had always collected the installments on the mortgages and the rents under the leases, and Bigham had never made these collections himself. But it was evident that both the installments and the rents were an important source of supply toward the monthly payments on the notes, and accordingly Bigham was insistent that they should be so applied. Quoting from his petition afterwards presented to the referee and now before us, he asserts that in consequence of his insistence Sweeney specially agreed to act as his agent, "to lease said premises, collect the rents thereof, account monthly, and monthly pay over to petitioner and to petitioner's account all the said rents collected by him"; these rents to be applied "on account of the sundry mortgages covering the several premises occupied by the said tenants, which said mortgages are included in the list of mortgages held by petitioner as collateral security, etc." Sweeney denies the agency, and the referee makes no finding of fact on this subject.

But it appears without dispute that on July 20, 1912, Bigham, asserting the existence of such an agency, notified the tenants of its termination, and demanded that the rents should thereafter be paid to himself. Two days later the petition in bankruptcy was filed, followed

by an adjudication on August 12. The South Side Trust Company was appointed trustee, and by operation of law became vested with the legal title to the leases and to the houses that had been reconveyed to Sweeney. Bigham and the trustee came at once into collision over the rents, and on October 21 Bigham presented a petition to the referee, setting up the special agency referred to, declaring that he had revoked it and had undertaken to collect the rents himself, and averring that the trustee had come into possession of the leases and was also attempting to collect the rents. The relief he prayed for was: (1) An order that the trustee deliver the leases to him, and account for any rents that might have been collected; and (2) an order preventing the trustee "from interfering in any way with petitioner's said tenants, and from hindering and annoying said petitioner in and about the collection of his said rents." It will be seen that this petition only refers to the leases, and asks for no relief on any other account. Both the referee and the District Court refused the prayers for relief, and the correctness of this refusal hardly needs discussion. Bigham does not contend that these leases had been assigned to him, legally or equitably, and the testimony concerning the so-called "agency" of Sweeney adds nothing of value to Bigham's position. As the trustee had the legal title to the houses and the leases, with the right to collect—subject of course to the duty of accounting to whomsoever might be ultimately entitled to the fund—Bigham's petition was properly dismissed.

[1, 2] But in some unexplained way the petition came to be treated as if it presented the claim of a mortgagee to take possession of mortgaged property, and to collect the rents thereof. Actual possession was not asserted, but the notice of July 20 was claimed to be a "constructive" possession. We do not intend to enter upon the discussion of this subject, except to say that in our opinion Bigham had no possession of the property, either actual or constructive, and had therefore no right to collect the rents, such as he might have had if the property had passed into his hands. In some particulars the law of Pennsylvania gives to a mortgagee unusual rights over the mortgaged property, but it has never gone to the length asserted here. In certain circumstances a mortgagee may acquire possession by an action of ejectment, or he may even take peaceable possession of the premises without legal proceedings, if his entry be unopposed; but we are advised of no statute or decision supporting the proposition that the mere notice of an asserted right to collect the rents is equivalent to actual possession. But Bigham is in reality not a mortgagee, but a holder of mortgages as collateral security, and we say nothing of the other difficulties that may lie in his road as a pledgee of unconverted and unsold collateral security. It is useless to discuss them, for we deal with the record as we have it, and the record is founded on Bigham's assertion that he is the virtual owner of the leases, and is entitled to their unobstructed possession and enjoyment.

The order of the District Court is affirmed.