In re W. R. KUHN CO. KUHN v. FELL. BESSEMER INV. CO v. SAME.

(Circuit Court of Appeals, Third Circuit. June 14, 1915.)

Nos. 1959, 1960.

1. BANKRUPTCY ⊛⟶191—LIENS—LIEN OF LANDLORD ON PROPERTY SUBJECT TO DISTRESS.

Within Act Pa. June 16, 1836, § 83 (P. L. 777), providing that goods and chattels on demised premises taken by virtue of an execution and liable to distress shall be liable for the payment of any rent due at the time of the taking thereof, the filing of a petition in bankruptcy is equivalent to the issuing of an execution.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 286, 287, 290, 351; Dec. Dig. ⊛⟶191.]

⊛⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. LANDLORD AND TENANT ☞267—DISTRESS—PERSONS ENTITLED TO DISTRAIN.

An assignment of rent due or to become due under a lease did not, without a transfer of the lease or the reversion, make the assignee the landlord, so as to be entitled to distrain for rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1080, 1081; Dec. Dig. ☞267.]

3. LANDLORD AND TENANT ☞267—DISTRESS—PERSONS ENTITLED TO DISTRAIN—"MORTGAGE."

An assignment of rent due or to become due under a lease to a mortgagee of the leased premises, together with notice thereof to the lessee and the lessee's acceptance of notice and subsequent payment of rent to the mortgagee, did not make the mortgagee the landlord, so as to be entitled to distrain for the rent under the law of Pennsylvania, since, while a mortgage is a conveyance of the fee, or has many of the incidents of such a conveyance, its essential object is to secure a debt, and nothing but actual possession will clothe the mortgagee with a qualified ownership of the fee, so as to give him a landlord's rights.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1080, 1081; Dec. Dig. ☞267.

For other definitions, see Words and Phrases, First and Second Series, Mortgage.]

4. BANKRUPTCY ☞191—CLAIMS—PRIORITY—PERSONS ENTITLED TO ASSERT.

W., one of the tenants in common of leased premises, was largely indebted to the lessee, and had so drawn against his individual share of the arrears of rent under the lease that he had no further interest therein, and, moreover, had assigned to H., his cotenant, all his interest in the lease until the happening of a contingency, which had not happened. Held, that H. alone and in his own right was entitled to make a claim for priority of payment of the rent out of property subject to distress and sold by the lessee's receiver in bankruptcy, even though he would have been obliged to issue a warrant of distress in the names of both cotenants.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 286, 287, 290, 351; Dec. Dig. ☞191.]

5. LANDLORD AND TENANT ☞265—DISTRESS—RIGHT TO DISTRAIN AFTER TERMINATION OF LEASE.

Under Act Pa. 1772 (1 Smith's Laws, p. 375), requiring that distraint shall be made during the continuance of the lessor's title or interest, but containing no limitation of time, where, after the termination of a lease, and after a new lessee was in possession, goods and chattels of the former lessee remained upon the leased premises, they were subject to distress for rent due from such former lessee.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1062–1074; Dec. Dig. ☞265.]

Petitions to Revise from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, District Judge.

In the matter of the W. R. Kuhn Company, bankrupt; W. B. Fell, trustee. To review a decree denying their claim of priority in payment, Harry P. Kuhn and the Bessemer Investment Company each bring petitions to revise. Decree affirmed on the Investment Company's petition, and reversed on Kuhn's petition.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Albert B. Schultz, of Pittsburgh, Pa., for petitioner Kuhn.

J. E. MacCloskey, Jr., of Pittsburgh, Pa., for petitioner Bessemer Inv. Co.

H. J. McAllister, of Pittsburgh, Pa., for trustee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. Each of these petitions asserts error in determining the ownership of a fund amounting to $3,550, which was produced by a receiver's sale of furniture and other personal property that belonged to the bankrupt, the W. R. Kuhn Company. An involuntary petition was filed on September 30, 1914, and the sale took place in November. The property was on the premises of the Hotel Rittenhouse in the city of Pittsburgh, and, although the bankrupt had not been the tenant since the 1st of May, its personal property was nevertheless subject to a lawful distraint; that is, a distraint that might properly be levied upon these goods by a person enjoying the rights of a landlord. Two claimants appeared—Harry P. Kuhn and the Bessemer Investment Company—each claiming to have such rights, and each claiming priority out of the fund, although not for the same arrears of rent.

[1] In Pennsylvania, a landlord is given a limited priority by section 83 of the act of 1836:

"The goods and chattels being in or upon any messuage, lands or tenements, which are or shall be demised for life or years, or otherwise, taken by virtue of an execution, and liable to the distress of the landlord, shall be liable for the payment of any sums of money due for rent, at the time of taking such goods in execution: Provided, that such rent shall not exceed one year's rent."

As the filing of a petition in bankruptcy is equivalent to the issuing of an execution (Longstreth v. Pennock, 87 U. S. [20 Wall.] 575, 22 L. Ed. 451; Re Gerson, 8 Pa. Dist. Rep. 277; Re Keith-Gara Co. [D. C.] 203 Fed. 585, 29 Am. Bankr. Rep. 466; Ludlow v. Pugh (C. C. A. 3d Cir.) 213 Fed. 450, 130 C. C. A. 96, 32 Am. Bankr. Rep. 435), it became necessary to decide which of the claimants occupied the superior position, each asserting that on September 30, he had a landlord's right to distraint. The referee and the District Court rejected both claims, although not on the same ground, and each claimant has presented a petition to revise. The facts are not in dispute, and apply in part to both claims, but we will separate them as far as necessary.

### Claim of Bessemer Investment Company.

[2, 3] On June 29, 1908, Harry P. Kuhn and W. R. Kuhn were the owners of the hotel as individuals and tenants in common, and on that day they mortgaged the property to Henry Phipps, who assigned the mortgage to the Investment Company. Two days afterwards, on July 1, the owners leased the property to the W. R. Kuhn Company, the bankrupt corporation, who took possession and furnished the hotel. On the expiration of this lease Victor E. Hebert became the tenant and went into possession on May 1, 1914, at a monthly rent

of $2,000, payable on the 1st day of the month. The bankrupt's furniture, with some other personal property, remained on the premises, and continued to belong to the bankrupt until it was sold by the receiver. On May 29 the owners, who were both mortgagors and landlords, assigned to the Investment Company—

"all the rents and moneys due or to become due to the said H. P. Kuhn and W. R. Kuhn under and by the terms of the aforesaid lease, for the purpose of applying any sums of money that may be actually paid to the said Bessemer Investment Company towards the liquidation of the debt for interest, insurance, taxes, principal, and other charges, due or to become due on account of a certain bond and mortgage executed by William R. Kuhn and Harry P. Kuhn to Henry Phipps, dated the 29th day of June, 1908," etc.

Hebert accepted "notice of the assignment of the said rents due under the said lease to the Bessemer Investment Company," and afterwards paid the rent for June and July to the Investment Company, defaulting on the August and September installments. On September 14, bankruptcy proceedings were begun against Hebert, and a receiver was appointed, who went into possession of the hotel and continued the business for a short time, using the Kuhn Company's furniture, etc., on the premises. The business proved unprofitable, however, and Hebert's receiver permitted the Investment Company to take actual possession on October 1. It was agreed, however, that the Kuhn Company's receiver might leave the personal property of the Kuhn Company on the premises without being charged for rental or storage thereof. In November the Kuhn Company's receiver (who had been appointed on October 1) sold the personal property referred to, and thus produced the fund now in controversy.

The Investment Company's claim to priority must rest upon the ground that on September 30, the day before it took actual possession of the building, it was in legal contemplation the landlord of the premises, and was therefore entitled to distrain. This position can only be maintained if the Investment Company acquired a landlord's rights by the assignment of the rents on May 29, coupled with Hebert's acceptance of notice and his subsequent payment of rent for two months. In our opinion no such effect was produced thereby. In the first place, it is clear that the Investment Company did not become the landlord merely by virtue of the assignment. This was nothing more than a transfer of a chose in action, and did not carry with it the lease itself or the owners' reversion. Without a transfer of the lease or the reversion, the Investment Company would not become the landlord, and none but a landlord can distrain for rent. Helser v. Pott, 3 Pa. 179; Slocum v. Clark, 2 Hill (N. Y.) 475; 24 Cyc. 1291. This position is not controverted by the Investment Company; the brief of counsel (page 23) expressly declares that his client—

"does not rely on the mere assignment of rents; it contends that it had the legal title as mortgagee, and by the assignment of rents *and attornment* [of Hebert] the relation of landlord and tenant was created, and it became entitled to priority in distribution under the Act of Assembly of June 16, 1836," etc.

Now, whatever support the decisions in England and in several states of the Union may afford to this contention, the Pennsylvania

decisions do not accept it, and of course we must turn to these for the determination of this dispute. It is true that some looseness of expression may be found in the Pennsylvania cases, often due, no doubt, to the particular point of view on which the court may then have been laying stress; and it is easy, therefore, to quote statements that seem at first sight to go the full length of saying that a mortgage is a conveyance of the fee, with some, or with many, incidents of such a conveyance. And, indeed, such a statement is true enough, but it must always be taken with the qualification that the essential object of the conveyance is to secure a debt; and we may say also that this object, while it has always been prominent, has for many years been so conspicuous as to push very much into the background the fact that a mortgage is still a conveyance, and not merely a lien. But the theory that a mortgagee holds the legal title is still maintained, and therefore a mortgagee may (and in rare instances does) bring ejectment to recover possession, although he may only occupy the land until the rents and profits have paid his debt. And on the same theory, if he is able to enter peaceably, he may take possession of the premises for the same limited purpose without the aid of legal proceedings at all. But we have been referred to no decision, and we are aware of none, that extends the doctrine of constructive possession to a Pennsylvania mortgagee; before he can be treated even as the temporary owner of the fee with a consequent right to rents and profits, he himself, or his agent, must go into actual possession. We need not cite cases at any length to establish these propositions; it is sufficient to quote from one or two. In Myers v. White, 1 Rawle (Pa.) 353, it is said:

"There has been an essential departure from the law of England in Pennsylvania, for the mortgagee has no estate, property, or interest in the land, until he takes possession of the property. Vide Rickert and Reed v. Madeira, ruled at this term. Nor has it, as I believe, ever been understood that such a privity exists as that a mortgagee can compel the tenant of the mortgagor to pay him the rent, whether the lease was executed either before or after the mortgage. Nor has it heretofore been considered that as to the mortgagee the tenants under leases from the mortgagor, fairly and bona fide made, can be treated as trespassers. In Pennsylvania, a mortgage, as has been held in repeated decisions, although in form an absolute conveyance, is in substance but the security for a debt. The mortgagor is the owner of the land, with the same power over it as any other tenant in fee, with incumbrances or liens upon the property."

And in Corporation for Relief of Poor Ministers v. Wallace, 3 Rawle (Pa.) 109, a mortgage is described as a security for money:

"As between the mortgagee and mortgagor, the mortgage was in form a conveyance of the land. In England it was so in a court of law for some purposes, to wit, for giving right to possession; but the mortgagee in possession had * * * to account for the rents and profits, and when they had paid his debt, his estate was gone. * * * The Legislature here transfer the power over to the courts of law; they treat it as a debt; the plea to it is payment; they treat the lands as the property of the mortgagor; they are to be levied on, advertised, and sold as his; * * * and to him the residue of the purchase money after payment of the debts is to be returned."

There is no authority for saying that in Pennsylvania a mortgagee is allowed to convert a tenant of the mortgagor into his own tenant

merely by giving notice that he will hereafter require the rent to be paid to himself; and the tenant would not strengthen such a notice by agreeing to obey it, or even by actual obedience. Nothing but possession in fact will clothe the mortgagee with the qualified ownership of the fee, so as to give him a landlord's rights; as long as he remains out of actual possession, the mortgagor continues to be the landlord, and is entitled to distrain for the rent. Re Sweeney (C. C. A. 3d Cir.) 212 Fed. 1, 128 C. C. A. 483; Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420, 28 L. Ed. 415; Freedman's Co. v. Shepherd, 127 U. S. 494, 8 Sup. Ct. 1250, 32 L. Ed. 163.

It should not be forgotten that, although the Investment Company was entitled to receive the rents from Hebert under the assignment of May 29, it had no relation whatever with the Kuhn Company, and had no possible claim, legal or equitable, against the personal property in question, unless upon the ground that, as the property was on the premises, it was subject to a landlord's distraint, although it belonged to a stranger. Without prolonging the discussion, therefore, we conclude by saying that we agree with the referee and the District Court in holding that the Investment Company's claim cannot be maintained.

### Claim of Harry P. Kuhn.

[4, 5] In order to be understood, this claim requires the statement of several other facts in addition to some of those already set forth. Harry P. Kuhn and W. R. Kuhn, owning the hotel as tenants in common, leased it to the Kuhn Company in 1908, and on May 1, 1914, when the term came to an end, the bankrupt owed arrears of rent amounting to much more than the fund now in dispute. Hebert then became the tenant, and took possession of the building and also of the personal property that was still owned by the Kuhn Company, but was left on the premises. This property was used by Hebert, and afterwards by his receiver, until October 1, 1914, when the Investment Company took actual possession of the building. The property may have been used by the Investment Company also, but at all events it was allowed to remain on the premises without charge for rental or storage, until it was sold in November by the Kuhn Company's receiver. We have previously stated that the Investment Company claimed priority out of the fund for the rent due from Hebert for August and September; and it should now be noted that Harry P. Kuhn is claiming priority for the arrears due on May 1, not from Hebert, but from the Kuhn Company, the preceding tenant. The claim in question was disallowed on the ground that on September 30 Kuhn had no longer the right to distrain these goods, and therefore was not entitled to priority under the act of 1836. Accordingly the question for decision is whether he had the right to distrain these particular goods on that date.

That a tenant in common may distrain for his share of the rent is in strictness a dictum in De Coursey v. Guarantee Co., 81 Pa. 217; but we have no doubt it was intended to recognize Rivis v. Watson, 5 M. & W. 266, which appears to be an express authority for this proposition. In any event, we may lay the De Coursey Case aside,

although it has not been disapproved; for under the facts before us we have no hesitation in sustaining the claim of Harry P. Kuhn, although made in his separate right. It appears that the other tenant in common, Wm. R. Kuhn, was largely indebted to the Kuhn Company and had so drawn against his individual share of the arrears of rent that he had no further interest therein. Moreover, on February 1, 1914, he had assigned to Harry P. Kuhn all his interest in the lease until the rents collected should amount to $20,000, a contingency that did not happen. Therefore, as Harry P. Kuhn alone was entitled to receive whatever was still due, we see no reason why he might not make the claim in his own right, even (and we need not decide the point) if he might have been obliged to issue a warrant of distress in the names of his brother and himself.

But when may a distraint be levied? At common law the right was gone when the lease came to an end, and in order to enlarge the right the statute of 8 Anne was enacted in 1710, by which a landlord was permitted to distrain after the expiration of the term, but with the proviso:

"That such distraint be made within six calendar months after the determination of the lease, and during the continuance of the landlord's title or interest, and the possession of the tenant from whom such arrears are due."

In Pennsylvania much of this statute was adopted by the act of 1772 (1 Smith's Laws, p. 375); but the act goes further than the English statute, for it contains no limitation of time, and only requires:

"That such distress be made during the continuance of the lessor's title or interest."

In other words, although the tenant may have gone out of possession, if his goods remain upon the premises, they are liable to distraint, and as long as the landlord's title or interest continues he may distrain without other limitation of time.

In Moss' Appeal, 35 Pa. 162, although the lessee had abandoned the premises and had forfeited the lease in 1855, nevertheless the landlord was allowed priority out of the proceeds of an execution that was not levied until 1858. The lessee had left goods on the premises, and these were held to be still subject to the landlord's distress. In Lewis' Appeal, 66 Pa. 312, a lease expiring in April, 1869, had been made, and the landlord had died in September, 1868, devising the property to his widow. Under this lease arrears of rent were due, and the widow was allowed priority therefor, although she had made a new lease from April, 1869, to the same tenant, and although he had gone into possession by virtue of this new agreement. But she owned the title and the reversion, and this was enough. The court, referring to the act of 1772, held as follows:

"There can be no doubt of the [widow's] right, under the provisions of this act, to distrain the goods of the tenant on the demised premises, at the time of the sheriff's sale, for the arrears of rent which accrued under the original lease, after her husband's death, notwithstanding the expiration of the term and the subsisting tenancy under the new lease. * * * [A landlord's] right to distrain, after the termination of the term, is without limita-

tion as to time; the statute gives him this right whenever the rent is in arrear, and he retains the title."

And Whiting v. Lake, 91 Pa. 349, is also in point. There the tenant had left the premises, the rent being in arrears, and another person had gone in without a lease. The landlord distrained on this person's goods for the arrears due from the tenant, and the distress was supported on the express ground that the act of 1772 authorized the landlord to distrain, the court saying:

"The statute of Anne, from which ours is copied, limited the landlord's right of distress to six months after the determination of the lease; but our act authorizes it whenever there is rent in arrear and the landlord retains the title."

It seems clear, therefore, that, as the Kuhn Company's goods were still on the premises, Harry P. Kuhn might have lawfully distrained them for the arrears due May 1, although the Kuhn Company's lease had expired, and although Hebert had taken possession of the building. That is, Harry P. Kuhn had the right to distrain them if he still retained title; and this brings us to the point on which the trustee seems to lay most stress. We do not understand the argument to be that the landlords were no longer the owners of the reversion on September 30, 1914. There are no facts to support this position, for, as already stated, the assignment of May 29, to the Investment Company merely transferred a chose in action, the right to future rents. But the reasoning appears to be that because the landlords had made a new lease to Hebert on May 1, they had somehow parted with the right to distrain the goods of the Kuhn Company still on the premises for the arrears still due by that company. In our opinion the Pennsylvania cases cited to support this proposition—Clifford v. Beems, 3 Watts (Pa.) 246; Beltzhoover v. Waltham, 1 Watts & S. (Pa.) 416; Greider's Appeal, 5 Pa. 422; Walbridge v. Pruden, 102 Pa. 1—are not in point, and we shall not take time to distinguish them. It is no doubt true that in some situations (although not in all) a landlord has been denied the right to distrain the goods of one tenant for arrears of rent due from a preceding tenant; but we have been referred to no decision that denies the right to distrain the goods of a tenant for his own debt, although his tenancy may have expired, and although a new tenant may have gone into possession, provided, of course, the goods of the first tenant are still on the premises. There are no equities in the present case to take it out of the general rule, and we think, therefore, that the claim now under consideration should have been allowed.

Upon the petition of the Bessemer Investment Company the decree is affirmed; but upon the petition of Harry P. Kuhn the decree is reversed.