17-224
*AEI Life, LLC v. Lincoln Benefit Life Co.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2017

(Argued: October 2, 2017     Decided:  June 8, 2018)

Docket No. 17-224

───────────────

AEI LIFE LLC,
*Plaintiff-Appellee,*

v.

LINCOLN BENEFIT LIFE COMPANY,
*Defendant-Appellant*.

───────────────

Before:     SACK, RAGGI, AND CARNEY, *Circuit Judges*.

AEI Life LLC is the beneficiary of a life insurance policy issued by Lincoln Benefit Life Company.  A third party originally obtained the policy by fraudulent means.  That party sold it to AEI several years later.  AEI brought this action seeking a declaratory judgment that Lincoln was barred from challenging the validity of the policy because the two-year contestability period had lapsed.  The United States District Court for the Eastern District of New York (Jack B. Weinstein, *Judge*) granted AEI's subsequent motion for summary judgment.  The principal issues on appeal are whether New York or New Jersey law applies, and

whether the incontestability law of that state will allow Lincoln to challenge the policy's validity.  We conclude that the contract does not contain a choice-of-law provision and therefore New York conflict-of-law rules govern the dispute.  Because those rules instruct the courts to look to the "center of gravity" of the events at issue to determine which state's substantive law applies, and the center of gravity here is New York, we look to New York's substantive law in analyzing the issues presented.  New York's substantive incontestability law bars Lincoln's challenges to the policy in this litigation.  Accordingly, the district court's judgment is:

AFFIRMED.

JULIUS A. ROUSSEAU (Eric Biderman, *on the brief*), Arent Fox LLP, New York, NY, *for Defendant-Appellant.*

KATHERINE L. VILLANUEVA (Jason P. Gosselin, *on the brief*), Drinker Biddle & Reath LLP, Philadelphia, PA, *for Plaintiff-Appellee.*

SACK, *Circuit Judge*:

Lincoln Benefit Life Company ("Lincoln") is an insurance company with its principal place of business in Lincoln, Nebraska.  In 2008, it approved and issued a life insurance policy for Gabriela Fischer, the insured.  The policy application,

amongst other misstatements, fraudulently exaggerated Fischer's wealth. The policy was paid for by a stranger to the transaction, which rendered the policy voidable. (The parties dispute on appeal whether it was void *ab initio*.) Lincoln failed to contest the validity of the policy until after the policy's two-year contestability period had lapsed, and after the policy had been sold to an innocent third party, AEI Life LLC ("AEI"). AEI brought suit against Lincoln seeking a declaratory judgment that Lincoln was barred from contesting the validity of the policy under the incontestability clause it contained.

The laws with respect to such incontestability clauses in New York and New Jersey differ in a crucial respect: Unlike New York, New Jersey allows an insurance company to contest the validity of a policy obtained by fraudulent means even after two years have expired since the policy became effective. The Fischer policy contains what the district court called a choice-of-law clause, but we refer to it, more accurately we think, as a conformity clause. It reads: "This certificate is subject to the laws of the state where the application was signed. If any part of the certificate does not comply with the law, it will be treated by us as if it did." Fischer Policy, Page 16, at Joint App'x 98. Although the policy purports to have been signed in New Jersey, the district court concluded that it

was in fact signed in New York—the domicile of Fischer and her son. AEI contends that New York law applies and that its incontestability law bars Lincoln's challenges.

The United States District Court for the Eastern District of New York (Jack B. Weinstein, *Judge*) granted AEI's motion for summary judgment. *AEI Life, LLC v. Lincoln Benefit Life Co.*, 225 F. Supp. 3d 136 (E.D.N.Y. 2016). Following an evidentiary hearing, the district court decided that: (1) The conflict-of-law rules of the state in which the district court sits, New York, determine the applicable choice-of-law principles, *id.* at 140; (2) under New York conflicts law, the court ordinarily would apply a choice-of-law clause included in an insurance contract, *id.* at 143; (3) in this case, however, the original beneficiary's "extensive fraud in the inducement" in obtaining the policy invalidated what the district court identified as the insurance contract's choice-of-law clause, *id.* at 148; (4) the district court was therefore required to use New York's "center of gravity rule" to identify which state's substantive law applied, *id.* at 148-49; (5) the dispute's center of gravity was New York because "every contact of significance [with respect to the issuance of the insurance policy] was in New York," *id.* at 141; and

(6) under New York law, Lincoln's challenges to the validity of the policy failed, *id.* at 149-50.

We agree with the district court that New York law governs this policy and that under New York law, the policy is incontestable.  We differ from the district court only in the reasoning we employ in rejecting the policy provision purportedly favoring New Jersey law.  In our view, the provision is not a "choice-of-law" clause because it does not reflect the parties' intent to select the law of a specified state.  We therefore need not decide whether the provision was rendered invalid by fraud, because we conclude that it never controlled the choice-of-law question in any event.

The judgment of the district court is therefore affirmed.

## BACKGROUND

*The Inception of Gabriela Fischer's Life Insurance Policy*

In May 2008, Lincoln received an application to insure the life of then 77-year-old Gabriela Fischer ("Fischer").  The application represented that Fischer had a net worth of $87 million, an annual income of $1.5 million, and unearned income of $5 million.  A confidential financial statement included in the application stated that Fischer had assets totaling $1 million in cash, $10 million

in accounts receivable, $40 million in real estate, and $30 million in other business interests. Three individuals signed the application and declared the information truthful: Fischer, Irving Fischer (Fischer's son and the trustee of the Gabriela Fischer Trust ("Fischer Trust"), hereinafter "Irving"), and Joel Jacob (the insurance broker). A Brooklyn accountant also verified by letter Fischer's net worth as stated in the application. Lincoln approved Fischer's application shortly thereafter, agreeing to pay $6,650,000 to the policy's beneficiary—the Fischer Trust—upon the death of Fischer.

It is uncontested that the financial information contained in the application was false and fraudulent. Fischer testified that she never owned one million dollars and that it was "absurd" for the application to report that she earned $1.5 million in one year. Joint App'x 824. The policy required an initial payment of $151,450 and premiums totaling $205,000 per year. Fischer testified that she did not have the resources to make these payments. Instead, account records show that a stranger to the policy deposited $1 million into the Trust shortly after Fischer's application was submitted, and this money was used to make payments related to the policy.

A policy thus obtained is known as a Stranger-Originated Life Insurance ("STOLI") policy, which is generally procured as an investment for the stranger, rather than for the benefit of the insured's beneficiaries.[1]  Nevertheless, Lincoln received all the payments it was due under the contract, and it is not alleged that the application was fraudulent with regard to Fischer's health.[2]  Jacob, the broker, received a commission of approximately $100,000 for his efforts with respect to Fischer's policy and, although he was aware that agents are forbidden by law to share their commissions with clients, transferred $50,000 to Irving for acting as a

---

[1] STOLI policies are generally disfavored or prohibited.  *See, e.g.,* N.Y. Ins. Law § 7815(c) ("No person shall directly or indirectly engage in any act, practice or arrangement that constitutes stranger-originated life insurance.").  The reasons STOLI policies are disfavored include (1) that they constitute wagers on human life because strangers not only bet on how long the insured will live, but against his or her longevity, and (2) the stranger lacks an insurable interest at inception.  *See, e.g.,* 2005 NY Insurance GC Opinions LEXIS 280 (finding that a STOLI policy lacked an insurable interest and was therefore prohibited).  New York insurance law defines "insurable interest" as either (1) "a substantial interest engendered by love and affection" between "persons closely related by blood or law;" or (2) "a lawful and substantial economic interest in the continued life, health or bodily safety of the person insured."  N.Y. Ins. Law § 3205(a)(1)(A)-(B).  An insurable interest is required for the creation of a valid insurance policy to avoid a situation in which one would financially benefit from the insured's death without any countervailing reason to care if the person lives or dies.

[2] Lincoln concedes that despite the fraud, the policy's premiums were calculated "based on the statistics that applied to this woman with respect to her age and other conditions," which Lincoln does not allege to be fraudulent, and it received all the "premiums that [its] actuary said should be applicable here."  In other words, Lincoln was not "cheated of premiums."  Joint App'x 804**.**

"middleman." Joint App'x 892. Although everyone involved feigned ignorance during his or her testimony—testimony that the district court found untrustworthy, *AEI Life*, 225 F. Supp. 3d at 148—the district court found little reason to doubt that they all knowingly engaged in what was a STOLI scheme.

Some three years later, in 2011, the Fischer Trust sold the policy to Progressive Capital Solutions, LLC, which two days later resold it to the plaintiff, AEI. AEI is a bona fide purchaser: Lincoln does not allege that AEI knew about the fraud when it bought the policy.

Lincoln discovered the fraud in 2013 and sought to invalidate the policy through a declaratory judgment action that it brought in the United States District Court for the District of New Jersey. After that court dismissed the case for lack of subject matter jurisdiction,[3] AEI filed this lawsuit in the Eastern

---

[3] *Lincoln Benefit Life Co. v. AEI Life, LLC*, 13 F. Supp. 3d 415 (D.N.J. 2014). The Third Circuit eventually overturned the judgment of the district court, *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99 (3d Cir. 2015), but the lawsuit in the Eastern District of New York had by then already begun. Judge Weinstein declined to dismiss that lawsuit in deference to Lincoln's first-filed action in New Jersey. He decided that although the case was first filed in New Jersey, the "Eastern District was the first to establish jurisdiction over the parties, the New York Action is procedurally far more advanced than the New Jersey Action, and the balance of convenience weighs against transferring the case." *AEI Life, LLC v. Lincoln Benefit Life Co.*, No. 14-CV-6449, 2015 WL 9286283, at *4, 2015 U.S. Dist. LEXIS 170225, at *10 (E.D.N.Y. Dec. 21, 2015).

District of New York seeking a declaratory judgment holding that the life insurance policy is incontestable as a matter of law. Both New York and New Jersey have enacted two-year incontestability laws, which prohibit insurance companies from successfully challenging the validity of a life insurance policy after accepting the policy's premiums for two years or more.[4] N.Y. Ins. Law § 3203(a)(3); N.J. Stat. Ann. § 17B:25-4. But the two states have interpreted their incontestability laws differently. Because of that difference, the central issue on appeal is whether New York or New Jersey law applies.

*District Court Hearing and Decision*

In the case at bar, the district court conducted a hearing related to the choice-of-law issue, making several findings of fact based on it. The court found that Fischer is a New Yorker who has lived in Brooklyn for the past sixty years. Her son is also a New York resident, having lived in Monsey, New York for thirty years. Jacob solicited the Fischers in New York, and evidence in the record establishes that the medical history portion of the application was completed by

---

[4] New York enacted its incontestability law to reflect its "conviction that a policyholder should not indefinitely pay premiums to an insurer, under the belief that benefits are available, only to have it judicially determined after the death of the insured that the policy is void because of some defect existing at the time the policy was issued." *New Eng. Mut. Life Ins. Co. v. Caruso*, 73 N.Y.2d 74, 78, 535 N.E.2d 270, 272, 538 N.Y.S.2d 217, 219 (1989).

a New York doctor in Brooklyn. The Fischer Trust was formed and operated in New York. Transfers of the Trust's funds were made through a New York bank account. And the current beneficiary, AEI, is also a New York citizen.

The principal portion of the life insurance application, however, purported to be signed in Lakewood, New Jersey, and the form used in the policy was submitted to the New Jersey Department of Insurance. Lincoln is licensed to provide insurance in New Jersey, not in New York. But the district court credited Fischer's testimony to the effect that she had never been to Lakewood, New Jersey, and Irving's testimony that the application was actually signed in New York. Based largely on that evidence, the court found that "[t]he policy was negotiated, contracted, signed, and issued in New York to individuals residing in New York." *AEI Life*, 225 F. Supp. 3d at 149.

After concluding that the policy's choice-of-law clause—which, as noted, we think is better denominated a conformity clause—was invalid due to fraud in the inducement, the court analyzed these contacts under New York's center-of-gravity test. *Id.* at 147-49. It concluded that New York had the most significant relationship to the transaction, and New York law therefore governed. *Id.* at 148-49. The district court then considered New York's substantive law and held that

insurance companies cannot avoid the application of New York's incontestability law by alleging public policy concerns or lack of consent. *Id.* at 149-50. Finally, the court held that there was insufficient evidence to support Lincoln's argument that the Fischer Trust was improperly constituted. *Id.* at 150-51.

Accordingly, the district court ruled that the policy was incontestable and granted judgment for AEI. This timely appeal followed.

## DISCUSSION

### I. Standard of Review

We review a district court's interpretation of a contract provision *de novo*. *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 75 (2d Cir. 2009). We also review *de novo* a district court's choice-of-law determination and its application of state law. *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 43 (2d Cir. 2005). The district court's findings of fact related to its choice-of-law analysis, however, are reviewed for clear error. *See Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 97 (2d Cir. 2002); *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 121 (2d Cir. 2001). To the extent that facts are relevant to the resolution of AEI's substantive summary judgment motion, we review the record before the district

court in the light most favorable to Lincoln. *See Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016).

## II. Conformity with State Law Provision[5]

At the outset of its analysis, "[a] federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006). Under New York law, "courts will generally enforce choice-of-law clauses," *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 470, 45 N.E.3d 917, 919, 25 N.Y.S.3d 21, 23 (2015), because "contracts should be interpreted so as to effectuate the parties' intent," *id.* at 470, 45 N.E.3d at 919, 25 N.Y.S.3d at 23; *cf. Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009) (concluding that a forum-selection clause is "entitled to a presumption of enforceability" in a foreign dispute); *see also Dukes Bridge LLC v. Sec. Life of Denver Ins. Co.*, No. 10-CV-5491, 2015 WL 3755945, at *4, 2015 U.S. Dist. LEXIS 77724, at *11 (E.D.N.Y. June 16, 2015) (stating that the "presumption of enforceability"

---

[5] As noted, the district court referred to this clause as a choice-of-law clause.

applies to a choice-of-law clause (citing *Aguas,* 585 F.3d at 700)).  While there is no magical incantation that parties must utter to create an effective choice-of-law provision, the clause must clearly manifest the parties' intent to be governed by the law of a particular jurisdiction.  *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624, 629, 859 N.E.2d 498, 500, 825 N.Y.S.2d 692, 694 (2006) (noting that the agreement should be "clear and unambiguous").

Lincoln argues that a provision in Fischer's policy is an enforceable choice-of-law clause.  As quoted above, it reads:

**Conformity with State Law**

This certificate is subject to the laws of the state where the application was signed.  If any part of the certificate does not comply with the law, it will be treated by us as if it did.

Fischer Policy, Page 16, at Joint App'x 98.  According to Lincoln, this provision unambiguously specifies that New Jersey law applies because the principal portion of the policy application purports to have been signed in Lakewood, New Jersey.  AEI responds that the provision is not a choice-of-law clause and is unenforceable because of fraud in the inducement with respect to the purchase of

the policy.[6]  In any event, AEI contends, the provision must be read as specifying New York law because the policy was in fact signed in New York.

As we have already stated more than once above, we agree with AEI that the policy's provision is not a choice-of-law clause.  It is, instead, exactly what it is called in the policy: a conformity clause.  "A conformity clause has the effect of excising a provision of an insurance policy that conflicts with or is voided by state law and replacing the provision with the prevailing state statute or judicial rule of law." *Lawrimore v. Progressive Direct Ins. Co.*, 627 F. App'x 253, 254 (4th Cir. 2016) (per curiam) (citing *Kay v. State Farm Mut. Auo. Ins. Co.*, 349 S.C. 446, 450, 562 S.E.2d 676, 678-79 (Ct. App. 2002)); *see also Vencor Inc. v. Nat'l States Ins. Co.*, 303 F.3d 1024, 1032 n.15 (9th Cir. 2002) (describing a "Conformity with State Statutes" provision that purports to amend any provision of the insurance policy so that it conforms with state law); *Wesselman v. Travelers Indem. Co.*, 345 A.2d 423, 423-24 (Del. 1975) (describing a similar conformity clause); 2 COUCH ON INS. § 19:3 (3d ed. 2017) (describing the scope of "[a] conformity clause in a[n insurance] policy . . . [as] provid[ing] that clauses which are in conflict with the

---

[6] Because we agree that the provision does not clearly signal the parties' intent to be governed by New Jersey law, we need not reach the district court's ruling that this clause is invalid because of Fischer's fraud (but, counterintuitively, not the policy as a whole).

14

statutes are declared and understood to be amended to conform to such statutes.").

The Rhode Island Supreme Court reviewed an identical provision in another of Lincoln's policies and concluded that it was, indeed, a conformity clause:

> The unambiguous title of the provision establishes that its purpose is to ensure that the annuity conforms with each state's laws relating to insurance, investments and other relevant subjects, and, if not in compliance with state law, the annuity will not be held invalid by Lincoln. Indeed, the second sentence of the provision makes this explicit, articulating that Lincoln will treat the SIA as enforceable even if a state law invalidates a particular provision of the contract.

*DeCesare v. Lincoln Benefit Life Co.*, 852 A.2d 474, 482 (R.I. 2004).

We do not foreclose the possibility that a single policy provision might constitute both a conformity clause and a choice-of-law clause. We conclude only that the provision in the policy at issue here, as written, is not both.[7] If the

---

[7] To the extent courts, in non-precedential opinions, have construed similar language in other policies to do double duty, we do not follow their decisions. *See Montague v. Dixie Nat'l Life Ins. Co.*, No. 3:09-cv-687-JFA, 2011 WL 2294146, at *10-11, 2011 U.S. Dist. LEXIS 61539, at *32 (D.S.C. June 8, 2011); *Smith v. Lincoln Benefit Life Co.*, No. CIV. A. 08-01324, 2009 WL 789900, at *7, 2009 U.S. Dist. LEXIS 24941, at *17 (W.D. Pa. Mar. 23, 2009).

parties intended this provision also to act as a choice-of-law clause, we would expect it to bear a title that indicated it was serving both purposes. Instead, the provision here was denominated "Conformity With State Law," suggesting that it was intended to be a conformity clause only. We would also anticipate that the clause would name the chosen state if it were also operating as a choice-of-law clause. Lincoln's conformity clause, to the contrary, does not state anything like, hypothetically: "This certificate is to be governed by the laws of New Jersey. If any part of the certificate does not comply with New Jersey law, it will be treated as if it did." Instead, it refers to "the state where the application was signed." Fischer Policy, Page 16, at Joint App'x 98. And, in making the certificate "subject to" such laws, the clause suggests only conformity to such laws. [8]

---

[8] Lincoln argues that the "subject to" language of the provision sufficiently establishes that the provision is also a choice-of-law clause. In support, it points to our opinion in *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir. 1998). But *Advani* is inapposite. First, the clause at issue in *Advani*—"subject to English law and practice"—specified within the clause itself the jurisdiction whose law was to be applied. *Id.* at 159. Second, our opinion interpreted the language against the drafter, who in that case argued that English law should not apply. *Id*. at 162-63. Moreover, the "subject to" provision in *Advani*—unlike the provision here—was not preceded by a heading identifying it as a "Conformity Clause," and it does not appear that any party argued that it should be interpreted as one.

The language, even if viewed as a choice-of-law clause, is at best ambiguous as applied to the facts of this case. The district court found that the principal portion of the contract was in fact signed in New York, despite purporting to be signed in New Jersey. Is "the state where the application was signed" the actual or the purported location? Lincoln argued that this question should be resolved in its favor. But we are obligated to resolve any ambiguity against Lincoln, the contract's drafter.[9] *See Guardian Life Ins. Co. of Am., Inc. v. Schaefer*, 70 N.Y. 2d 888, 890, 519 N.E.2d 288, 289, 524 N.Y.S.2d 377, 378 (1987); *Pacifico v. Pacifico*, 920 A.2d 73, 78 (N.J. 2007).

Indeed, as far as we can tell, most courts to consider the issue have held that a conformity clause does not determine the applicable law. *Sonoco Bldgs., Inc. v. Am. Home Assurance Co.*, 877 F.2d 1350, 1352 (7th Cir. 1989) (stating that a conformity clause "merely indicates an intent to avoid inconsistencies between

---

[9] Lincoln argues that we should not interpret the contract against it, the defrauded party. *See generally DeSola Grp., Inc. v. Coors Brewing Co.*, 199 A.D.2d 141, 141, 605 N.Y.S.2d 83, 84 (1st Dep't 1993); *Kahn v. Great-W. Life Assur. Co.*, 61 Misc. 2d 918, 923, 307 N.Y.S.2d 238, 244 (Sup. Ct. Richmond Cty. 1970). This argument might be persuasive if Lincoln's adversaries were Fischer and her son. But the principle carries considerably less weight here because AEI was an innocent bona fide purchaser, not the fraudster. *Cf. Bankers Tr. Co. v. Litton Sys., Inc.*, 599 F.2d 488, 492-93 (2d Cir. 1979) ("Where an innocent third party, such as a holder in due course, is suing upon an illegal contract, the policy argument is inapplicable because the plaintiff has done no wrong for which it should be penalized.").

the *statutory* laws of the state in which the policy was issued and the terms of the policy," and does not act "as the source of law for interpreting the terms of the policy." (emphasis in original)); *Crisler v. Unum Ins. Co. of Am.*, 366 Ark. 130, 134, 233 S.W.3d 658, 661 (2006) (concluding that a conformity clause is not a choice-of-law clause because "[n]o specific state is mentioned, and a reasonable construction of this provision is simply that any illegal provisions are void to the extent that they deviate from the law of the state in which the policy is delivered"); *DeCesare*, 852 A.2d at 482-83 (holding that Lincoln's conformity provision "is a savings clause and does not operate as a choice-of-law provision" because it does not "express[ly] stipulat[e] the parties' intent"); *see also Nat'l Sur. Corp. v. Mack*, No. CV 15-35-BLG-SPW, 2015 WL 8779995, at *2, 2015 U.S. Dist. LEXIS 167634, at *5 (D. Mont. Dec. 15, 2015) (noting that "the provision entitled 'Conformance with State Law' does not operate as a choice-of-law provision"); *Ins. Co. of N. Am. v. San Juan Excursions, Inc.*, No. C05-2017z, 2006 WL 2635635, at *4, 2006 U.S. Dist. LEXIS 68240, at *13 (W.D. Wash. Sept. 12, 2006) (concluding that the injured claimant's "assumption that the Policy's conformity-to-state-law provision operates as a choice-of-law provision is mistaken").[10]  We agree with

---

[10] Not all courts agree.  *See Montague*, 2011 WL 2294146, at *10-11, 2011 U.S. Dist. LEXIS 61539, at *32 (deciding that identical language "appears to be a combination of a choice-

these courts and conclude that Lincoln's conformity clause does not dictate which state's law applies in this matter.

### III.  Center of Gravity

Without an effective choice-of-law provision to guide us, we must resort to New York's conflict-of-law analysis to determine whether New York or New Jersey substantive law applies.  New York "looks to the 'center of gravity' of a contract to determine choice of law."[11]  *Forest Park Pictures*, 683 F.3d at 433 (citing

---

of-law provision, as well as a form of a savings clause in the event that part of the policies violated South Carolina law"); *Smith*, 2009 WL 789900, at *7, 2009 U.S. Dist. LEXIS 24941, at *17 (concluding without analysis that Lincoln's conformity clause is a choice-of-law clause).  The only New York court (either federal or state) expressly to consider the issue left the question unresolved.  *See Eagley v. State Farm Ins. Co.*, No. 13-CV-6653P, 2015 WL 5714402, at *6 n.4, 2015 U.S. Dist. LEXIS 132184, at *16 n.4 (W.D.N.Y. Sept. 29, 2015); *cf. Frank v. Reassure Life Ins. Co.*, No. 12 Civ. 2253 (KEF), 2012 WL 5465027, at *5, 2012 U.S. Dist. LEXIS 161512 , at *14 (S.D.N.Y. Nov. 9, 2012) (concluding without discussion that a policy's clause stating "[a]ny provision of this Policy which conflicts on its Date of Issue, with the statutes of the state where you live will be automatically amended" constituted "designat[ion of] the law of the state of the insured as applicable law"), *aff'd*, 548 F. App'x 706, 708 n.5 (2d. Cir. 2013) (observing parties agreed on appeal as to the choice of law).  After the *Eagley* court noted the split in authority, it concluded that it need not decide the question because New York law applied irrespective of whether the clause was an enforceable choice-of-law provision. *Eagley*, 2015 WL 5714402, at *6 n.4, 2015 U.S. Dist. LEXIS 132184, at *16 n.4.  We think that this judicial disagreement at most underscores the provision's ambiguity.

[11] Before determining "center of gravity," courts must first consider "whether an actual conflict exists between the laws of the jurisdictions involved." *Forest Park Pictures*, 683 F.3d at 433.  The district court and the parties agree that such conflict exists as to Lincoln's ability to seek a declaration that the policy here is invalid.  *See AEI Life*, 225 F. Supp. 3d at 148 (determining that in New York, but not New Jersey, an incontestability

*In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 226, 613 N.E.2d 936, 939, 597 N.Y.S.2d 904, 907 (1993)).  "Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Brink's Ltd. v. S. African Airways*, 93 F.3d 1022, 1030-31 (2d Cir. 1996).  But "[t]he place of contracting and place of performance are given the greatest weight." *Forest Park Pictures*, 683 F.3d at 433.

The district court made several findings of fact that are relevant to this inquiry.  Most importantly, it found that

> [t]he policy was negotiated, contracted, signed, and issued in New York to individuals residing in New York.  The broker and general agency who sold the policy were located in New York, and the Trust was executed and operative in New York.  Transfers of the Trust's funds were made through a New York bank account.

*AEI Life*, 225 F. Supp. 3d at 149 (internal citation omitted).  By contrast, the court detected only minimal contacts with New Jersey.  It found that Fischer, her son, and the broker falsely stated that the application was signed in New Jersey, even

---

clause bars contests to a policy after two years, without exceptions for claims of fraud or lack of insurable interest).

though it was in fact signed in New York. *Id.* And Lincoln—which was licensed to provide insurance in New Jersey, not New York—submitted the form used for the Fischer policy to the New Jersey Department of Insurance. *Id.* at 148-49.

The two most important factors under New York law are the place of contracting and the place of performance. Based on the district court's factual findings—which, we conclude, were not erroneous (let alone clearly so)—the place of contracting is New York: the state in which "the policy was negotiated, contracted, and signed." *Id.* at 149. The place of performance for an insurance contract is the location where "the premiums [are] billed and a claim on the policy [is] made." *Fed. Ins. Co. v. Keybank Nat'l Ass'n*, 340 F. App'x 5, 8 (2d Cir. 2009) (summary order). The district court found that the premiums were billed to New York citizens and paid out of a New York bank account. *AEI Life*, 225 F. Supp. 3d at 149. And throughout the life of the policy, the claim was to be paid in New York. When the policy was created, the benefit was to be paid to the Fischer Trust in New York. Now, the benefit is to be paid to AEI in New York.

As to the other center-of-gravity factors: Fischer and Irving were both domiciled in New York. AEI is a citizen of New York, and Lincoln is a citizen of Nebraska, not New Jersey. All the contract negotiations between the Fischers

and the broker occurred in New York.  The principal contact with New Jersey was the purported place of signing, but even if we assumed this fictional place of signing were real for the choice-of-law analysis,[12] that one contact would not outweigh the significance of New York's various relationships with the policy. Considering the totality of these contacts, we endorse the district court's conclusion.  To employ its felicitous phrasing:  "The center of gravity here is as clearly fixed in New York as is the Empire State Building."  *Id.* at 141.

**IV.    New York Substantive Law**

Proceeding under New York's substantive law, then, we turn to Lincoln's assertions of error by the district court in granting AEI's motion for summary judgment.

*1. Public Policy Exception*

Lincoln first argues that Fischer's policy should be void *ab initio* because it constitutes a wager on human life.  Under this theory, New York's

---

[12] Lincoln argues that AEI should be estopped from denying that the contract was executed in New Jersey and cites to non-binding case law to suggest that parties cannot use their fraud on insurance applications to their advantage.  *See*, *e.g.*, *Am. Centennial Ins. Co. v. Sinkler*, 903 F. Supp. 408, 413, 417 (E.D.N.Y. 1995); *Matter of Eagle Ins. Co. v. Singletary*, 279 A.D.2d 56, 59, 717 N.Y.S.2d 351, 353 (2d Dep't 2000).  These cases are plainly distinguishable from the case at bar: AEI did not commit, or indeed know about, the fraud perpetrated against Lincoln.

incontestability law would be irrelevant because the policy was void at its inception, i.e., it was never effective in the first place.[13]  Lincoln cites cases from other states, or cases applying out-of-state law, to support its argument that STOLI policies are void *ab initio*.  Although conceding that no New York court has so held, Lincoln contends that *New England Mutual Life Insurance Co. v. Doe*, 93 N.Y.2d 122, 710 N.E.2d 1060, 688 N.Y.S.2d 459 (1999) supports its position.

We disagree.  There, the New York Court of Appeals interpreted an incontestability clause in a disability insurance policy, declining to find an exception for fraud.  But this case hinges on a difference between New York's incontestability law for disability insurance and for life insurance.  New York's incontestability law for *disability* insurance provides an exception for application fraud—an exception not available in the incontestability statute for life insurance policies.  *Compare* N.Y. Ins. L. § 3216(d)(1)(B)(i) (providing an exception to the incontestability defense for claims relating to "fraudulent misstatements"), *with*

---

[13] Policies void at inception never come into existence, while voidable policies are in effect until the insurer challenges them and, under New York law, may not be contested after two-years have elapsed since the policy was issued.  *Caruso*, 73 N.Y.2d at 76, 535 N.E.2d at 271, 538 N.Y.S.2d at 218; *see generally* 17 Couch on Ins. § 240:67 (3d ed. 2017) ("An incontestable clause means exactly what it says; that is, it cuts off all defenses based on misrepresentations where the policy is not affirmatively repudiated within the incontestable period, at least when the misrepresentations are not such as to render the entire policy void *ab initio* under the law of the jurisdiction.").

N.Y. Ins. L. § 3203(a)(3) (providing no exception to the incontestability defense for fraud).  Thus, the court determined that when a disability insurer drafted its policy's incontestability clause without including a fraud exception, the insurer made the calculated decision to exclude it and could therefore not seek to invalidate its policy based on fraud after two years had elapsed since the policy became effective.  *New Eng. Mut. Life Ins. Co. v. Doe*, 93 N.Y.2d at 130-31, 710 N.E.2d at 1063-64, 688 N.Y.S.2d at 463.

Lincoln cites language from the *Doe* opinion, *id.*, which, it urges, indicates that the court would have ruled differently if it were analyzing a life insurance policy that was not legally permitted to contain an exception for fraud (as we are here):  "Were we faced with a choice between fraud and statutory design, a far more difficult case would be presented.  It would be difficult for us to conclude that the Legislature knowingly enacted a statute that would encourage fraud.  But that is not the case."  *Id.* at 130-31, 710 N.E.2d at 1063, 688 N.Y.S.2d at 463.  This language appears to be no more than an equivocation by the *Doe* court about an issue not then before it.  We therefore agree with the district court here that "[d]icta suggesting that public policy *could* bar enforcement or that a court

considering disability insurance *might* rule differently if life insurance were at issue, are inapplicable." *AEI Life*, 225 F. Supp. 3d at 150 (emphasis in original).

Moreover, the New York Court of Appeals has rejected just that argument in a case that is strikingly similar to the one before us: *New England Mutual Life Insurance Co. v. Caruso*, 73 N.Y.2d 74, 535 N.E.2d 270, 538 N.Y.S.2d 217 (1989). There, an insurer sought to challenge a life insurance policy after the two-year contestability period expired. Like Lincoln, the insurer argued that the policy was void *ab initio* because the beneficiary impermissibly lacked an insurable interest and because wagering contracts are to be discouraged.[14] *Id.* at 76, 535 N.E.2d at 271, 538 N.Y.S.2d at 218.

The court was not convinced: "[N]othing in the statutory scheme makes void *ab initio* policies acquired by one lacking an insurable interest or forecloses the application of an incontestable clause to bar an insurer's disclaimer of liability." *Id.* at 80-81, 535 N.E.2d at 273, 538 N.Y.S.2d at 221. The court noted

---

[14] New York insurance law defines "insurable interest" as either (1) in the case of persons closely related by blood or law, "a substantial interest engendered by love and affection" or (2) "a lawful and substantial economic interest in the continued life, health or bodily safety of the person insured." N.Y. Ins. Law § 3205(a)(1). In *Caruso*, the beneficiary was a business partner of the insured, but was alleged to have no economic interest in his life or health. *Caruso*, 73 N.Y.2d at 80, 535 N.E.2d at 273, 538 N.Y.S.2d at 220.

that "further deterrents" against wagering contracts would only have a marginal benefit, while permitting insurers to contest a contract after two years would "result in a forfeiture to [the beneficiary] and an unnecessary advantage to [the insurer]." *Id.* at 82, 535 N.E.2d at 274, 538 N.Y.S.2d at 221. In reaching this conclusion, the court noted that insurers are not defenseless—they may challenge invalid policies, but must do so promptly within the applicable time limit. *Id.* at 82-83, 535 N.E.2d at 274-75, 538 N.Y.S.2d at 222. *Caruso* leaves little room for doubt, we think, that under New York law, wagering insurance contracts entered for the benefit of parties that lack an insurable interest are simply voidable, not void *ab initio*, and therefore cannot be challenged after the contestability period has expired.

2. *Fischer's Consent*

Lincoln also argues that the policy was void *ab initio* because Fischer never consented to it. Fischer testified that she was unaware of the life insurance policy and denied signing the application. Maybe so, but New York's incontestability law does not create an exception for lack of consent. Again, we are bound by *Caruso*, 73 N.Y.2d at 79-83, 535 N.E.2d at 272-75, 538 N.Y.S.2d at 219-22. The court's decision—concluding that policies lacking an insurable

interest are not void *ab initio*, but only voidable upon an insurer's challenge within the contestability period—was dependent on its analysis of the language found in New York Insurance Law Section 3205. Section 3205 requires insurance policies to have *both* an insurable interest *and* the insured's consent: "Section 3205 says that such contracts shall not be 'procured' unless the benefits are payable to one having an insurable interest *and are issued with the consent of the insured*." *Caruso*, 73 N.Y.2d at 79, 535 N.E.2d at 272, 538 N.Y.S.2d at 220 (emphasis added). The court decided that Section 3205's "procurement" language, when compared to the stronger terms used in other sections of the insurance law, indicated that the legislature did not intend to void such policies at inception. *Id.* at 79-81, 535 N.E.2d at 272-74, 538 N.Y.S.2d at 219-21.

> [O]ther sections provide that policies on the life of
> minors shall not be "issued" except in certain amounts
> and that policies on property are not "enforceable"
> except for the benefit of one having an insurable
> interest. Such terms are traditionally used when
> policies are void at inception and enforcement is
> contrary to public policy. They differ substantially from
> the prohibition against "procurement" found in
> section 3205.

*Id.* at 80, 535 N.E.2d at 273, 538 N.Y.S.2d at 220 (citations omitted).

We think the Court of Appeals' interpretation of Section 3205 extends to lack of consent. *See id.* at 79, 535 N.E.2d at 272, 538 N.Y.S.2d at 220 (interpreting Section 3205 to forbid the procurement of policies without an insurable interest or the insured's consent). Section 3205's prohibition as to lack of consent does not, like insurable interest, use the stronger terms identified by the *Caruso* court, such as "issued" or "enforceable," which the court thought generally to indicate that a policy was void at inception. *Id.* at 79-81, 535 N.E. 2d at 72-73, 588 N.Y.S2d at 520; N.Y. INS. LAW § 3205(c) (stating that "[n]o contract of insurance . . . shall be made or effectuated unless . . . the person insured . . . applies for or consents"). And we agree with the courts that have held similarly. *See Berkshire Settlements, Inc. v. Ashkenazi*, No. 09-CV-0006, 2011 WL 5974633, at *5, 2011 U.S. Dist. LEXIS 136663, at *15 (E.D.N.Y. Nov. 29, 2011) (relying on *Caruso* to conclude that "[t]he Court can think of no reason why the insured consent provision would receive a different treatment" than the insurable interest provision, and holding that the incontestability clause prevented a consent-based challenge to the policy); *Halberstam v. United States Life Ins. Co. in the City of N.Y.*, 36 Misc. 3d 497, 502, 945 N.Y.S.2d 513, 517 (Sup. Ct. Kings Cty. 2012) (relying on *Berkshire Settlements* to

conclude that the expiration of a life insurance policy's two-year contestability period prevented an insurer from challenging consent).

Some New York courts have held that forged names on an insurance application will void a policy at inception, s*ee McHugh v. Guardian Life Ins. Co. of Am.*, 277 A.D.2d 1016, 1017, 716 N.Y.S.2d 178, 179 (4th Dep't 2000); *Choczner v. William Penn Life Ins. Co. of N.Y.*, 212 A.D.2d 750, 752, 623 N.Y.S.2d 597, 598-99 (2d Dep't 1995), and constitute a proper challenge to a life insurance policy after the contestability period has tolled, *see Am. Mayflower Life Ins. Co. of New York v. Moskowitz*, 17 A.D.3d 289, 292, 794 N.Y.S.2d 32, 35 (1st Dep't 2005).  But there is authority to the effect that this exception, if it exists under New York law,[15] does

---

[15] The New York lower courts are divided on the issue of whether lack of consent renders a policy voidable or void *ab initio*. *Compare McHugh*, 277 A.D.2d at 1017, 716 N.Y.S.2d at 179 (void *ab initio*), and *Choczner*, 212 A.D.2d at 752, 623 N.Y.S.2d at 598-99, *with Halberstam*, 36 Misc. 3d at 502, 945 N.Y.S.2d at 517 (voidable).  We are not required to follow any of those decisions, however.  "We are bound, as was the district court, to apply the law as interpreted by New York's intermediate appellate courts . . . unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on this issue, would reach a different conclusion." *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir 1999); *cf. Strubbe v. Sonnenschein*, 299 F.2d 185, 188 (2d Cir. 1962) (noting that we are unlikely to rely on lower state court decisions if they appear to conflict with a ruling of the state's highest court, the courts are divided on the issue, or we are "convinced by other persuasive data that the highest court of the state would decide otherwise") (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).  In light of our analysis of the Court of Appeals' opinion in *Caruso* above, we are, indeed, persuaded that the New York Court of Appeals would conclude, if the question were squarely before it, that policies lacking consent because of forgery are only voidable at the request of the insurer within the contestability period.

not apply where "a trust was the undisputed purchaser, owner and beneficiary of the policy," because "the trust is not a stranger to the policy, even where the insured did not consent to its purchase." *Halberstam*, 36 Misc. 3d at 500-01, 945 N.Y.S.2d at 516. Here, the Fischer Trust was the beneficiary and purchaser of the policy, and its trustee, Irving, testified that he negotiated the application with Jacob and signed documents related to the policy. The Trust was thus not a stranger to the policy, and Lincoln's challenge to Fischer's consent is also barred by New York's incontestability law.

### 3. *Trust Formation*

Finally, Lincoln argues that it was entitled to a jury trial on the issue of whether the Fischer Trust was validly established. In general, if a trust is not properly formed, it cannot enter into a contract. *See, e.g., Fasano v. DiGiacomo*, 49 A.D.3d 683, 685, 853 N.Y.S.2d 657, 659 (2d Dep't 2008). Lincoln argues that the Trust was not compliant with New York law because Fischer's signature establishing the Trust was a forgery. The district court determined, however, that because the trust document was notarized, there was a presumption that the signature was authentic, which could only be successfully rebutted by clear and convincing evidence. *AEI Life*, 224 F. Supp. 3d at 151 (citing *Orix Fin. Servs., Inc.*

*v. Roth*, No. 06-CV-2069, 2008 WL 953994, at *5, 2008 U.S. Dist. LEXIS 28554, at

*16-17 (S.D.N.Y. Apr. 8, 2008); *Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc.*,

No. 01-CV-4788, 2006 WL 587483, at *18, 2005 U.S. Dist. LEXIS 401889, at *39

(S.D.N.Y. Mar. 8, 2006); *Chianese v. Meier*, 285 A.D.2d 315, 320, 729 N.Y.S.2d 460,

466 (1st Dep't 2001), *aff'd as modified and remanded*, 98 N.Y.2d 270, 774 N.E.2d 722,

746 N.Y.S.2d 657 (2002); *Spilky v. Bernard H. La Lone Jr., P.C.*, 227 A.D.2d 741, 743,

641 N.Y.S.2d 916, 917-18 (3d Dep't 1996)).  The district court decided that

Lincoln's evidence was not sufficiently clear and convincing to rebut this

presumption. *Id.* at 150-51.

    We agree.  Lincoln's primary evidence to suggest forgery is the testimony

of a handwriting expert, who concluded that the Fischer signature on the trust

document matched the Fischer signature on the policy application.  And because

Fischer testified that she did not sign the policy application, Lincoln argues that

we should infer that she also did not sign the trust document, and that the same

Fischer imposter forged Fischer's signature on both occasions.  We conclude that

no reasonable juror could find Lincoln's indirect evidence that Fischer's signature

was forged to be "clear and convincing."  Unlike the policy application, Lincoln

offered no direct testimony from Fischer that she had not signed the trust

document.  Moreover, in his own report, the handwriting expert proffered by Lincoln acknowledged "intrinsic limits in the examination of copies rather than original documents" and that the copies he examined were "very low quality images, making it difficult, if not impossible, to see the fine details in the images."  Joint App'x 696.  This testimony is too weak to warrant the inferential leap Lincoln suggests or rebut the presumption of authenticity created by notarization.  Lincoln's challenge to the Trust's validity therefore also fails.

## CONCLUSION

We have considered all the parties' remaining arguments on appeal and conclude that they are without merit.  For the foregoing reasons, we AFFIRM the judgment of the district court.