24-1045-cv
*American GreenFuels Rockwood (Tennessee), LLC, et al. v. Aik Chuan Construction, PTE. Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUM-MARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FED-ERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of March, two thousand twenty-five.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> WILLIAM J. NARDINI,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

AMERICAN GREENFUELS ROCKWOOD (TENNESSEE), LLC, A DELAWARE LIMITED LIABILITY COMPANY

> *Plaintiff-Counter-Defendant-Appellee*,

KOLMAR AMERICAS, INC.,

> *Counter-Defendant-Appellee*,

> v.                                                   24-1045-cv

AIK CHUAN CONSTRUCTION, PTE. LTD., A SINGAPORE REGISTERED COMPANY,

> *Defendant-Counter-Claimant-Appellant*.

---

For Plaintiff-Counter-Defendant-Appellee:     JOHN N. THOMAS (Leslie A. Davis, *on the brief*), Troutman Pepper Hamilton Sanders LLP, New York, NY.

For Defendant-Counter-Claimant-Appellant: JOHN F. HAGAN, JR. (Mark J. Samartino, *on the brief*), Arnold & Porter Kaye Scholer LLP, Chicago, IL; Melissa Brown, Arnold & Porter Kaye Scholer LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART** and **VACATED IN PART** and the case is **REMANDED** for further proceedings consistent with this order; and the request for sanctions by appellee American GreenFuels Rockwood (Tennessee), LLC is **DENIED**.

Defendant-Counter-Claimant-Appellant Aik Chuan Construction PTE. Ltd. ("Aik Chuan") appeals from a December 5, 2023 judgment, entered after a three-day bench trial, awarding Plaintiff-Counter-Defendant-Appellee American GreenFuels Rockwood (Tennessee), LLC ("GreenFuels") breach-of-contract damages in the amount of $28,729,840 as well as post-judgment statutory interest. In reaching its decision, the district court (Cote, *J.*) determined that an "Event of Default" under GreenFuels' loan to nonparty Global Energy Hold Co., LLC ("Global Energy")[1] had occurred, triggering Aik Chuan's obligation under its agreement with GreenFuels (the "Subordination Agreement") to guarantee the amounts due under that loan. Because the condition precedent to Aik Chuan's obligations had taken place, the district court held that Aik Chuan's refusal to pay its presently due obligations was a breach of contract. The district court also dismissed Aik Chuan's counterclaims alleging that GreenFuels and its parent company, Kolmar Americas, Inc. ("Kolmar"),[2] deliberately induced the Event of Default and conducted an

_____

[1] Multiple affiliates of Global Energy Hold Co. were involved in the transactions at issue in this case. We refer to these various entities as "Global Energy."

[2] Kolmar created GreenFuels, a limited liability company, for the specific purpose of providing the

2

unreasonable foreclosure sale. Aik Chuan contests several aspects of the district court's decision on appeal, including its ruling that an Event of Default occurred; that the foreclosure sale was conducted in compliance with applicable law and resulted in a fair market price for the collateral; and the district court's damages calculation.

## I.     Factual Background[3]

As relevant to this appeal, Aik Chuan, a Singapore-based conglomerate, contracted with Proton Power, Inc. in 2014 to build a plant in Rockwood, Tennessee (the "Rockwood Plant") commercializing a novel process for producing synthetic fuel from wood chips. In March 2020, after spending six years and over $60 million on this project with little success, Aik Chuan decided to sell the Rockwood Plant to Global Energy.

At this same time, GreenFuels became involved in the Rockwood Plant as a lender, entering an agreement to provide a $7.95 million loan to Global Energy (the "Loan Agreement"). These funds were earmarked for the construction of one fully operational module ("Module 2"), allowing Global Energy to prove the technology's viability through a "Verification Test" and attract additional funding to complete construction of the Rockwood Plant. The Loan Agreement therefore required that the Rockwood Plant pass the Verification Test by May 31, 2021, the "Target Verification Date."[4] A failure to achieve Verification by this date resulted in an Event of Default under the Loan Agreement, giving GreenFuels the power to accelerate the amounts due—which

---

loan that is now the subject of this dispute. "GreenFuels" and "Kolmar" are therefore used interchangeably, unless otherwise noted.

[3] The facts in this section are drawn from the district court's post-trial findings of fact and from undisputed additional record evidence.

[4] The parties agree that the date reflected in the Loan Agreement, May 31, 2020, was a scrivener's error, and that the correct date is May 31, 2021.

included the outstanding principal plus a 70% fee—and impose a "Default Rate" of interest of 25% per annum.

GreenFuels also entered into the Subordination Agreement with Aik Chuan, in which Aik Chuan promised to pay Global Energy's obligations under the Loan Agreement (the "Outstanding Indebtedness") if the loan went into default. Specifically, the Subordination Agreement set out that "if an Event of Default occurs," GreenFuels was to provide prompt notice to Aik Chuan with "an accounting of the outstanding amount of the indebtedness under the Financing Documents as of such date (the 'Outstanding Indebtedness')." Joint App'x 1123. The Financing Documents included, *inter alia*, the Loan Agreement. Aik Chuan was then "obligated to assume" the Financing Documents from GreenFuels, taking GreenFuels' place as Global Energy's lender, and pay GreenFuels the "Outstanding Indebtedness" as defined in the Subordination Agreement. *Id*. GreenFuels also secured, as collateral for its loan, all real and tangible property at the Rockwood Plant through the execution of a Credit Line and Deed of Trust (the "Deed of Trust").

After months of delaying the Verification Test due to design issues with Module 2, Global Energy failed to meet the Target Verification Date. GreenFuels subsequently notified Aik Chuan that an Event of Default had occurred and sought payment of Global Energy's Outstanding Indebtedness under the Loan Agreement. Aik Chuan refused to pay, leading GreenFuels to exercise its right to foreclose on the Rockwood Plant under the Deed of Trust. As the only bidder at the July 9, 2021 foreclosure sale, GreenFuels took title to the plant for $1.7 million.

**II.      Procedural History**

GreenFuels filed this action on September 14, 2021, alleging Aik Chuan breached the Subordination Agreement by failing to pay the Outstanding Indebtedness upon the occurrence of an Event of Default under the Loan Agreement. As an affirmative defense, Aik Chuan argued that

4

GreenFuels conducted an improper foreclosure sale and was therefore not entitled to recover on its deficiency claim for the remaining amounts owed. Aik Chuan also brought various counter-claims against GreenFuels and Kolmar. On November 20, 2023, after a bench trial, the district court issued an Opinion and Order granting judgment to GreenFuels on its breach of contract claim and denying Aik Chuan's counterclaims. Final judgment in the matter was entered on December 5, 2023. We assume the parties' familiarity with the remaining facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision.

**III.      Standards of Review**

"Following a bench trial, we review a district court's findings of fact for clear error, and its conclusions of law *de novo*." *Carco Grp., Inc. v. Maconachy*, 718 F.3d 72, 79 (2d Cir. 2013). Under the clear error standard, "'[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety,' we 'may not reverse it.'" *Siemens Energy, Inc. v. Petróleos de Venezuela, S.A.*, 82 F.4th 144, 153 (2d Cir. 2023) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74 (1985)). Rather, we are permitted to "set aside a district court's factual findings" under this standard only if our review of the record leaves us "with the definite and firm conviction that a mistake has been committed." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 119 (2d Cir. 2021) (quoting *United States v. U.S. Gypsum*, 333 U.S. 364, 396 (1948)).

A district court's interpretation of contracts, a question of law, is reviewed *de novo*. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007). In addition, this Court "review[s] *de novo* a district court's choice-of-law determination." *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 131 (2d Cir. 2018). We review "*de novo* a district court's . . . application of state law" but "findings of fact" underlying its analysis are "reviewed for clear error." *Id*. Finally,

5

"[w]e review the method of calculation of damages *de novo*, and the actual calculation of damages for clear error." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 97 (2d Cir. 1999).

**IV.        Event of Default**

The parties agree that Aik Chuan is required to pay Global Energy's Outstanding Indebtedness upon an Event of Default under the Loan Agreement. But Aik Chuan appeals the district court's determination that "[t]he duty to conduct the Verification Test rested on Global Energy," *Am. GreenFuels Rockwood (Tennessee) LLC, v. Aik Chuan Constr. PTE. Ltd.*, 702 F. Supp. 3d. 217, 239 (S.D.N.Y. 2023), arguing that the Loan Agreement's terms required GreenFuels to conduct the test, and that because GreenFuels did not, no default occurred. We disagree.

Both the Loan Agreement and the Subordination Agreement are governed by New York law, which provides that a contract is unambiguous when an "alternative construction would be unreasonable, . . . 'strain[] the contract language beyond its reasonable and ordinary meaning,' or . . . 'produce a result that is absurd.'" *Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1165 (2d Cir. 2024) (internal citations omitted). "A contract 'that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 56 (2d Cir. 2021) (quoting *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 91 N.E.3d 1186, 1193 (N.Y. 2017)).

The Loan Agreement's provisions governing the Verification Test process plainly contradict Aik Chuan's interpretation of the agreement. The Loan Agreement required Global Energy to select who would perform the Verification Test. Joint App'x 877 ("The testing of the Module II will be performed by parties *selected by the Borrower* [Global Energy], in consultation with the Lender [GreenFuels]." (emphasis added)). Global Energy was then required to provide GreenFuels written notice regarding "[a]ny Verification Tests which are to be performed on Module II,

6

and the results of such tests." Joint App'x 838. GreenFuels' responsibility under the Loan Agreement was merely to determine, based on the test results it received from Global Energy, if "Verification has occurred." Joint App'x 812. Aik Chuan's alternative interpretation, that GreenFuels must conduct the Verification Test and then notify itself of that fact, "produce[s] a result that is absurd." *Flynn*, 120 F.4th at 1165. We therefore agree with the district court that it was Global Energy's obligation under the Loan Agreement to conduct the Verification Test.

Aik Chuan argues in the alternative that GreenFuels waived the Target Verification Date when it consented to the implementation of a solution to one of Module 2's many mechanical issues that would not be completed until after the Target Verification Date had passed. This argument is also unavailing. Aik Chuan is correct that under New York law, a party may "waive enforcement of a contract term . . . by words or conduct," "notwithstanding a provision to the contrary in the agreement." *Condor Funding, LLC v. 176 Broadway Owners Corp.*, 46 N.Y.S.3d 99, 101 (N.Y. App. Div. 2017). But New York law also requires a "clear manifestation of an intent by plaintiff to relinquish her known right" to establish "the defense of waiver." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 584–85 (2d Cir. 2006) (quoting *Courtney–Clarke v. Rizzoli Int'l Publ'ns, Inc.*, 676 N.Y.S.2d 529 (N.Y. App. Div. 1998)). "'[M]ere silence, oversight or thoughtlessness in failing to object' to a breach of contract will not support a finding of waiver." *Id*. (quoting *Courtney–Clarke*, 676 N.Y.S.2d at 529). And because the parties' "intent to waive" a breach of contract is "a question of fact," we review only for clear error. *Jefpaul Garage Corp. v. Presbyterian Hosp.*, 462 N.E.2d 1176, 1178–79 (N.Y. 1984).

The district court concluded that GreenFuels' consent to a plan to fix Module 2's mechanical issues in April 2021 did not evince an intent to waive its right to enforce the May 31, 2021

7

deadline for Verification. *GreenFuels*, 702 F. Supp. 3d at 240. There was more than sufficient support in the record for this finding, including trial testimony that the parties involved in the April 2021 meetings did not discuss altering the Target Verification Date and evidence that GreenFuels sought to enforce this deadline less than a month after the purported waiver took place. On this record, we cannot say that the district court's conclusion that GreenFuels did not intend to waive the Target Verification Date was clearly erroneous. We therefore agree with the district court that no waiver occurred and with its conclusion that an Event of Default occurred under the Loan Agreement when Global Energy failed to pass the Verification Test by the Target Verification Date, triggering Aik Chuan's obligation to perform under the Subordination Agreement.

## V.  Foreclosure Sale

Aik Chuan also argues that the foreclosure sale of the Rockwood Plant was subject to the "commercial reasonableness" requirement under the Uniform Commercial Code (the "UCC"), disputing the district court's conclusion that the enforcement of the Deed of Trust was governed by Tennessee real property law rather than the UCC. We again disagree.

As a "federal court sitting in diversity jurisdiction," we "appl[y] the choice of law rules of the forum state." *Forest Park Pictures v. Universal Television Network, Inc.,* 683 F.3d 424, 433 (2d Cir. 2012). Because this appeal comes from a New York district court, we apply New York choice-of-law rules, which "generally enforce choice-of-law clauses . . . so as to effectuate the parties' intent." *AEI Life LLC*, 892 F.3d at 133 (quoting *Ministers & Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917, 919 (N.Y. 2015)). But "[i]n the absence of [a] substantive difference" in the relevant laws, "a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

8

New York and Tennessee have adopted the same UCC provision governing the enforcement of a security agreement that covers both personal and real property, *see* N.Y. U.C.C. § 9-604(a); Tenn. Code Ann. § 47-9-604, permitting us to forgo a choice-of-law analysis. This law provides:

> If a security agreement covers both personal and real property, a secured party may proceed:
>
> (1) under this part as to the personal property without prejudicing any rights with respect to the real property; or
>
> (2) as to both the personal property and the real property in accordance with the rights with respect to the real property, in which case the other provisions of this part do not apply.

N.Y. U.C.C. § 9-604(a).

The foreclosure sale at issue here was conducted pursuant to the Deed of Trust, which covers both personal and real property. It follows that GreenFuels was permitted to enforce this security agreement "in accordance with the rights with respect to the real property." *Id*. And the Deed of Trust specified that the rights with respect to the sale of the real property were governed by "the laws of the State of Tennessee," Joint App'x 1192, a clause that New York's choice-of-law rules respect, *AEI Life LLC*, 892 F.3d at 133. We therefore agree with the district court that Tennessee real property law governs the Rockwood Plant foreclosure sale.

Aik Chuan argues, in the alternative, that the district court erred in its conclusion that the sale was proper under Tennessee real property law and that the sale price was the fair market value of the Rockwood Plant. After an independent review of the record and relevant case law, we affirm for substantially the same reasons stated by the district court in its Opinion and Order that the foreclosure sale complied with Tennessee law and that $1.7 million was the fair market value of the Rockwood Plant. *GreenFuels,* 702 F Supp. 3d. at 243–44.

9

## VI.     Damages

Finally, we turn to Aik Chuan's challenge to the district court's damages award. The district court applied the Loan Agreement's Default Rate of 25% in its calculation of damages for Aik Chuan's breach of the Subordination Agreement. Because the Subordination Agreement does not impose interest on the Outstanding Indebtedness, we conclude that the district court erred by using the Loan Agreement's Default Rate rather than New York's statutory prejudgment interest rate of 9%.

Under New York law, "damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract," and are "measured from the date of the breach." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003). But "the applicable rate of prejudgment interest varies depending on the nature and terms of the contract." *NML Cap. v. Republic of Arg.*, 952 N.E.2d 482, 488 (N.Y. 2011). When a contract "inclu[des] . . . a clause directing that interest accrues at a particular rate 'until the principal is paid' (or words to that effect)," this "alters the general rule that interest on principal is calculated pursuant to New York's statutory interest rate after the loan matures or the debtor defaults." *Id.* at 489. Instead, "the interest rate in the contract will be used to calculate interest" until "the entry of judgment." *Id*. But "in the absence of 'a provision in the contract addressing the interest rate that governs after principal is due or in the event of a breach, New York's statutory rate will be applied as the default rate.'" *Ross v. Ross Metals Corp.*, 976 N.Y.S.2d 485, 488–89 (N.Y. App. Div. 2013) (quoting *NML Cap.*, 952 N.E.2d at 488).

Here, Aik Chuan's obligation under the Subordination Agreement was to pay the "Outstanding Indebtedness" defined as "the amount of indebtedness under the Financing Documents as of such date" the "Loan Documents Default Notice" was provided. Joint App'x 1123.

10

Because Aik Chuan's breach of the Subordination Agreement deprived GreenFuels of this $19,014,303 payment, Joint App'x 1250, that amount is what is required to "put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract," *Oscar Gruss & Son, Inc.*, 337 F.3d at 196.

New York courts then apply a prejudgment interest rate that "varies depending on the nature and terms of the contract." *NML Cap.*, 952 N.E.2d at 488. But while the Loan Agreement clearly provides a rate at which interest will accrue "'until the principal is paid," *id.* at 489, the Subordination Agreement does not. And Aik Chuan was not party to the Loan Agreement, nor was it obligated to assume Global Energy's obligations under that agreement.[5] Without "a provision in the contract addressing the interest rate that governs after principal is due," the correct prejudgment interest rate is "New York's statutory rate." *Id*. For this reason, we vacate in part and remand to the district court with instructions to recalculate the damages award by applying the statutory prejudgment interest rate under N.Y. C.P.L.R § 5004 to the $19,014,303 breach of contract damages amount.

## VII. GreenFuels' Request for Sanctions

Finally, we address GreenFuels' request that we impose sanctions against Aik Chuan pursuant to Fed. R. App. P. 38, which provides that "[i]f a court of appeals determines that an appeal

---

[5] We note that the district court found in its Opinion and Order that "Aik Chuan was required to assume Global Energy's financial obligations to GreenFuels as set forth in the Financing Documents." *GreenFuels*, 702 F. Supp. 3d at 229. But the Subordination Agreement stated Aik Chuan was "obligated to assume the Financing Documents from the *Lender* [GreenFuels]," Joint App'x 1123 (emphasis added), not from Global Energy. Thus, the agreement was structured such that if Aik Chuan had performed, it would have (1) paid the Outstanding Indebtedness; and (2) assumed GreenFuels' place in the Financing Documents as Global Energy's lender with the concomitant ability to pursue amounts due under the loan from Global Energy. It would not have assumed Global Energy's obligations under the Loan Agreement.

11

is frivolous, it may . . . award just damages and single or double costs to the appellee." As set out above, Aik Chuan's appeal identified a reversible error in the district court's damages calculation. We therefore reject GreenFuels' arguments that this appeal is frivolous and deny its motion for sanctions.

\* \* \*

We have considered Aik Chuan's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is hereby **AFFIRMED** in part, **VACATED** in part, and **REMANDED** for further proceedings consistent with this opinion; and GreenFuels' request for sanctions is **DENIED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court